THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **MAUREEN MINOGUE,** | ) | |
| | ) | |
| PLAINTIFF, | ) | Case No.: 1:20-CV-4174 |
| | ) | |
| vs. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **CELLO PARTNERSHIP, d/b/a** | ) | |
| **VERIZON WIRELESS,** | ) | |
| | ) | |
| DEFENDANT. | ) | |

## COMPLAINT

Plaintiff, MAUREEN MINOGUE, (hereinafter "Plaintiff" or "Ms. Minogue"), by and through her undersigned counsel of record, and complains against Defendant, CELLO PARTNERSHIP, d/b/a VERIZON WIRELESS, (hereinafter, "Defendant" or "Verizon"), and in so doing alleges, upon information and belief, except as to allegations particularly pertaining to herself, which are based on personal knowledge, states as follows:

### INTRODUCTION AND NATURE OF THIS ACTION

1. Plaintiff, a 50-year-old female and former employee of Defendant, files this action against Defendant for intentional and offensive disability discrimination, hostile work environment, and retaliation in violation of the Americans with Disabilities Act of 1990, 42 U.S. Code § 12101, *et. seq.* (the "ADA"), and for knowing and intentional violations of the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, ("FMLA").

2. Defendant willfully and deliberately subjected Plaintiff to ongoing and continuous disability discrimination, a hostile work environment and retaliation. When Plaintiff reported and opposed the unlawful disability discrimination and hostile work environment, Defendant willfully

1

ignored Plaintiff's complaints, and retaliated against Plaintiff by placing her on a performance improvement plan and effectively demoting her, which ultimately led to her unlawful, retaliatory termination on or around April 12, 2019.

3. The disability discrimination and hostile work environment were severe or pervasive and adversely affected the terms and conditions of Plaintiff's employment.

4. The disability discrimination, harassment, hostile work environment and retaliation continued from in or around March 2018 and until Plaintiff was unlawfully terminated on or around April 12, 2019.

5. Plaintiff was retaliated against for taking qualifying leave under the FMLA, 29 U.S.C. § 2601 *et seq.*

6. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, severe and egregious injury and damage as alleged herein.

7. All allegations and claims are pled in the alternative to the extent such an interpretation is necessitated by law, required for proper construction under the law, and permitted under federal law.

## JURISDICTION AND VENUE

8. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4), 1658 and 2201 and 2202. This is a suit authorized and instituted pursuant to the Americans with Disabilities Act of 1990, 42 U.S. Code § 12101, *et. seq*. (the "ADA") and the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, ("FMLA").

9. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(B) & (C) because Plaintiff was employed in this judicial district, Plaintiff currently resides in this

judicial district, and Defendant has offices in this judicial district, maintains personnel records in the district and engages in or ratifies illegal conduct here adversely affecting Plaintiff.

## CONDITIONS PRECEDENT TO FILING SUIT

10. Plaintiff has fulfilled all conditions precedent to the institution of this action under the Act of Congress known as the Americans with Disabilities Act of 1990, 42 U.S. Code § 12101, *et. seq*. (the "ADA"). Plaintiff filed her charge of discrimination within 300-days of the last discriminatory act. (See *Ex. A*, EEOC Charge).

11. Plaintiff then filed this lawsuit within 90-days of receiving her notice of right to sue from the Equal Employment Opportunity Commission. (See *Ex. B*, EEOC Notice of Right to Sue).

12. Plaintiff's claims arising under 29 U.S.C. § 2601, *et. seq.*, do not require administrative exhaustion and are subject to the statute's three-year statute of limitations for a willful violation.

## PARTIES

### A. Plaintiff

13. Plaintiff, Maureen Minogue, is a 50-year-old female citizen of the United States and a resident of Cook County, Illinois.

14. Plaintiff was employed by Defendant beginning in 2002. She remained employed by Defendant, with her most recent role as a "Client Manager," until her unlawful, retaliatory termination on or around April 12, 2019. At all relevant times herein, Plaintiff was employed by Defendant through the Schaumburg, Illinois location located in Cook County, Illinois.

**B.	Defendant**

15.	Defendant, Verizon, is a telecommunications company with its principal office located at One Verizon Way Basking Ridge, New Jersey 07920.

16.	With over 150 locations, Defendant is the largest American telecommunications company. Defendant is a global leader in delivering communications and technology solutions, and offers wireless products and services to hundreds of millions of subscribers.

17.	Defendant is authorized to do business in the Northern District of Illinois, Eastern Division, and at all times material to this action, has engaged in an industry affecting interstate commerce. Defendant is an entity subject to suit under the Americans with Disabilities Act of 1990, 42 U.S. Code § 12101, *et. seq*. (the "ADA") and 29 U.S.C. § 2601 *et seq.* At all times material to this action, the Defendant has employed fifteen (15) or more employees for each working day of twenty (20) or more calendar weeks and is an employer within the meaning of the ADA.

## COMMON ALLEGATIONS

18.	Plaintiff is a 50-year-old female.

19.	Plaintiff was hired by Verizon in or around 2002, and remained an employee through her unlawful, retaliatory termination on or around April 12, 2019.

20.	In her most recent position, Plaintiff was employed by Verizon as a "Client Manager," and had been hand selected to managed major accounts for Verizon, including managing the prestigious "Boeing" account for over six years.

21. Plaintiff was a hard-working, competent employee who, at all relevant times herein, met or exceeded Verizon's legitimate business expectations and routinely received praise for her dedication and outstanding performance.

22. Plaintiff suffers from anxiety and depression, which are disabilities within the meaning of the ADA that substantially limit one or more major life activity.

23. At all relevant times herein, Plaintiff was qualified, competent, and capable of performing all of the essential functions of her position with or without a reasonable accommodation.

24. Verizon knew Plaintiff was disabled.

25. In or around March 2018, Plaintiff spoke to her direct supervisor, Greg Heenan (hereinafter, "Greg"), over the phone and explained that she suffers from anxiety and depression, and that she felt her symptoms had been recently exacerbated.

26. After the conversation, Greg followed-up with Plaintiff via email by recapping bits of the conversation they had the day prior.

27. Within days of confiding in Greg, Plaintiff was demoted. Greg removed Plaintiff from the prized "Boeing" account which she had been managing for over six years and she was reassigned to the "John Deere" account.

28. Notably, Plaintiff was replaced by Lisa Vydra, a non-disabled female employee. Upon information and belief, Ms. Vydra still manages the Boeing account.

29. In or around June 2018, Greg placed Plaintiff on a 90-day performance improvement plan ("PIP").

30. On or around July 2, 2018, Scott Nash (Director of Manufacturing and Automotive Verticals) told Plaintiff, "*with your situation [disabilities], this change will be good for you.*"

31. Plaintiff worked day and night to meet the standards set forth in her June 2018 "PIP," while simultaneously adjusting to managing a new account.

32. By August 2018, Plaintiff was told that she successfully met her metrics and Verizon's legitimate business expectations, as outlined in the PIP.

33. Nevertheless, the long hours, increased scrutiny, micromanaging by her supervisors and increased travel contributed to additional stress and aggravation of Plaintiff's disabilities.

34. In early September 2018, Plaintiff flew to Minneapolis, Minnesota for a quarterly business review and team building event. On the flight to Minneapolis, Plaintiff suffered an anxiety attack. When she arrived at her hotel room in Minneapolis, she contacted her HR business partner, Donna Bonino, and explained that she could not attend the *optional* "team building" event, and wanted to get on the earliest flight back to Chicago. During the phone call with Donna, Plaintiff stated that she needed help and wanted to discuss taking a medical leave of absence.

35. Donna Bonino helped arrange a flight home for Plaintiff, and told Plaintiff that she should "*see a psychiatrist right away.*"

36. On or around September 14, 2018, Plaintiff filed for and was granted FMLA leave from September 17, 2018 through December 7, 2018.

37. On or around November 15, 2018, while still on FMLA leave, Plaintiff received an email from Greg stating that she was no longer assigned to the prestigious "John Deere" account. Verizon replaced Plaintiff with a less-qualified, non-disabled female, Sharon Westall.

6

38. Because Plaintiff was stripped of the large, prestigious accounts while still on FMLA leave, Plaintiff was left wondering about what accounts she would be responsible for upon her return from leave.

39. On or around December 7, 2018, Plaintiff returned to work and was immediately treated less favorably than similarly situated, non-disabled employees.

40. Plaintiff was not restored to the same position, with the same of substantially similar job duties she had prior to taking FMLA leave, as required by the plain language of the FMLA.

41. Just 7 days after her return from FMLA leave, Greg emailed Plaintiff stating, in part: "*PIP will restart 1/7/19 . .*"

42. Greg also told Plaintiff that starting the PIP on or around January 7, 2019 would be "perfect timing."

43. By the end of December 2018, Plaintiff's corporate American Express card was closed, despite acknowledgement from Greg, in writing, that there were no outstanding bills or expenses. Importantly, having an active corporate credit card is a critical function of a "Client Partner" or "Client Manager" position, as the position requires extensive travel that must be booked using an authorized corporate credit card. As such, revoking her corporate credit card effected Plaintiff's ability to book travel, which is a requirement of the position.

44. On or around January 7, 2019, just one month after returning from FMLA leave and being stripped of her prestigious accounts, Plaintiff was officially placed on a PIP.

45. Although Plaintiff objected to the PIP, Plaintiff diligently worked with her supervisor and HR to ensure that she was meeting the qualifications of the PIP.

7

46. In retaliation for taking FMLA leave, Verizon removed Plaintiff from all of the large, prestigious accounts that she had historically managed and she was instead tasked with smaller accounts.

47. By way of example, prior to Plaintiff's conversation with Greg in 2018 regarding her disabilities, Plaintiff was managing an account that generated nearly $22,000,000.00 in annual revenue for Verizon; however, upon her return from FMLA leave, Plaintiff's assigned business accounts generated merely $1,300,000.00 in annual revenue collectively.

48. As a result, Plaintiff suffered a massive pay decrease in Q1 2019.

49. On or around January 25, 2019, Plaintiff sent an email to HR Business Partner "Angela Venturi." In her email, Plaintiff detailed what she perceived to be retaliation occurring in the workplace.

50. Plaintiff's January 25, 2019 email resulted in several follow-up conversations with Angela Venturi, where the two discussed that the accounts that she was assigned were not typical of her "Sales City Clean-Up," and should be moved out of Greg's module.

51. In or around February 2019, within weeks of Plaintiff's HR report, she received notice that the requirements of her PIP were being altered or "escalated" to a "Stage 3."

52. After reporting to HR, Plaintiff was further retaliated against when she was assigned small, less-profitable and less favorable accounts, but still required to meet the same standards as the large, multi-million dollar accounts, and:

    a. Plaintiff was responsible for managing only five (5) small accounts, that did not have the business volume, presence, number of locations (nationally or internationally) or number of employees that would allow Plaintiff to

8

        adequately meet the stringent metrics necessary for larger accounts like Boeing and/or John Deere;

    b.    Verizon sets "20/20" standards, which requires Business Partners to meet with a client 20 times and have 20 follow-ups within a given time period. Historically, Plaintiff was never required to enter her 20/20 metrics. By way of example, when Plaintiff managed the "Boeing" Account," she was not required to enter 20/20 metrics, but was consistently recognized and praised for meeting or exceeding metrics; and

    c.    Plaintiff was placed on the escalated PIP, she was suddenly required to not only meet the 20/20 standards and metrics, but also enter them into a system validating that she met the requirements. Verizon never enforced any policy requiring Plaintiff to enter metrics into their system prior to June 2018. Rather, Plaintiff, on her own volition, circulated bi-weekly executive bulletin reports which reflected her progress in securing the Boeing account.

53. Verizon intentionally set unrealistic and unattainable "goals" in an effort to further discriminate against and retaliate against Plaintiff for taking FMLA leave and reporting what she perceived to be unlawful discrimination and retaliation permeating the workplace.

54. From February through March 2019, Plaintiff worked diligently to achieve all of her metrics. She continued weekly and/or bi-weekly "check-ins" with Greg and was confident that she would successfully meet the expectations set forth in the PIP.

55. On or around April 12, 2019, Plaintiff was blindsided when, as a direct result of Verizon's discriminatory are retaliatory behavior, she was terminated.

56. There is no legitimate, non-discriminatory/non-retaliatory basis for discriminating against or retaliating against Plaintiff. Plaintiff was a highly-qualified, dedicated employee who maintained fantastic client relationships and always performed all of her job duties and responsibilities in a manner which met or exceeded Verizon's legitimate business expectations.

57. Verizon was aware that the illegal and discriminatory actions described herein violated state and federal law. Verizon knowingly and intentionally violated state and federal law.

58. Plaintiff has suffered, and continues to suffer, severe injury and damages as a direct and proximate result of Verizon's discriminatory and retaliatory acts.

59. All allegations herein are pled in the alternative to the extent such an interpretation is necessitated for viable construction under applicable state and/or federal law.

## COUNT I

### RETALIATION FOR EXERCISE OF RIGHTS
### UNDER THE FAMILY MEDICAL LEAVE ACT, 29 U.S.C. § 2601 *et. seq.*

1. Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

2. At all relevant times, Plaintiff was an employee of Defendant, who was eligible for leave under the FMLA, in accordance with 29 U.S.C. § 2611(2).

3. At all relevant times, Defendant was an employer covered by the FMLA pursuant to 29 U.S.C. § 2611(4).

4. As alleged herein, Plaintiff engaged in the statutorily protected activity of taking 12-weeks of qualified FMLA leave for her own serious medical condition from approximately September 14, 2018 through approximately December 7, 2018.

5. On or around November 15, 2018, while Plaintiff was out on FMLA leave, she received an email stating that she was being removed from the "John Deere" account that she had been assigned to prior to exercising her FMLA leave.

6. Defendant assigned the John Deere account to a less-qualified, non-disabled female employee, Sharon Westall.

7. Plaintiff returned to work on or around December 7, 2019, but she was not restored to the same job. Rather, Plaintiff was subjected to pervasive retaliation and was completely stripped of her original job duties, responsibilities and historical accounts.

8. Upon her return, Plaintiff inquired about her 2019 account outlook, but was told by her supervisor that she was required to go through a 30-day "re-acclamation period" as a result of her FMLA leave.

9. By January 2019, just a few weeks after her return from FMLA leave, Plaintiff was placed on another PIP, and was not being assigned any large accounts, of which she had historically been responsible for.

10. By mid-January 2019, Plaintiff's newly assigned business accounts generated merely $1,000,000.00 annually, as opposed to the $22,000,000.00 plus she had managed prior to her FMLA leave.

11. Notably, the monetary discrepancy in the accounts managed after returning from FMLA leave had a dire impact on Plaintiff's compensation, which directly violates the FMLA.

12. In a further act of retaliation, in or around Mid-February 2019, Plaintiff was placed on an "escalated PIP," which imposed completely unreachable and unrealistic goals and expectations upon Plaintiff.

13. Upon information and belief, no other "Client Partners" or "Client Managers" were subjected to an "escalated PIP" with such blatantly unachievable expectations.

14. On or around April 12, 2019, Plaintiff was terminated.

15. At all relevant times before and after her FMLA leave, Plaintiff was able to perform the essential functions of her job.

16. Defendant knowing and/or recklessly retaliated against Plaintiff, as alleged herein, based on Plaintiff's exercise of her rights under the FMLA.

17. Defendant's violation of the FMLA was the direct and proximate cause of Plaintiff incurring severe damages including but not limited to loss of employment, lost wages, and lost benefits.

## COUNT II

### DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S. Code § 12101, *et. seq*.

18. Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

19. All conditions precedent to Count II have been satisfied.

20. Plaintiff, who suffers from anxiety and depression, is a qualified person with a disability under the ADA, and was an employee of Defendant pursuant to the ADA from approximately 2002 through the date of her unlawful, retaliatory termination on or around April 12, 2019.

21. Defendant is an employer as defined by Title I of the ADA, 42 U.S. Code § 12101, *et. seq*.

22. At all times relevant to this cause of action, Plaintiff was an "employee" of Defendant, and Defendant was Plaintiff's "employer" covered by and within the meaning of the ADA.

23. At all relevant times herein, Plaintiff was qualified to perform the essential functions of the job with or without reasonable accommodation.

24. In or around March 2018, Plaintiff told to her direct supervisor, Greg, that she suffers from anxiety and depression, and that she felt her symptoms had been recently exacerbated.

25. Plaintiff was immediately treated less favorably than non-disabled employees. The less favorable treatment included, but was not limited to:

    a. Plaintiff was placed on a PIP, which set forth completely unrealistic expectations;

    b. Plaintiff was stripped of her historic job duties and responsibilities which included managing large accounts;

    c. Plaintiff was micromanaged and harassed by Greg;

    d. Plaintiff's corporate credit card was cancelled;

    e. Greg shared information about Plaintiff's performance and PIP with other employees and in front of clients while on a business trip in Florida, which caused Plaintiff humiliation and embarrassment;

    f. Plaintiff was assigned only small revenue accounts, which made it nearly impossible to meet the goals set forth in the PIP; and

    g. Plaintiff was terminated.

26. The actions of Defendant as described and complained of above, are unlawful employment practices in that they likely have the effect of discriminating against, harassing, depriving and tending to deprive equal employment to, and otherwise adversely affecting Plaintiff, in violation of the ADA.

27. Defendant's discriminatory actions were severe or pervasive enough that it altered the conditions of Plaintiff's employment and both subjectively and objectively created a hostile and abusive work environment, which a reasonable person would find hostile or abusive, and which Plaintiff did find hostile and abusive.

28. Plaintiff complained of, and objected to, the disability discrimination and hostile work environment, as alleged herein.

29. Despite Plaintiff's numerous complaints, Defendant failed to stop, prevent, or otherwise address the ongoing discrimination and hostile work environment.

30. Defendant's actions were intentional and willful, and in deliberate disregard of and with reckless indifference to the federal laws and state laws.

31. Defendant engaged in the foregoing acts and conduct when they knew or should have known that the same were in violation of the ADA, and any alleged reasons to the contrary are pretext.

32. Defendant's willful and deliberate actions have caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, and other consequential damages.

## COUNT III

## HARASSMENT IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S. Code § 12101, *et. seq*.

33. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

34. All conditions precedent to Count III have been satisfied.

35. Plaintiff complained about, reported, opposed and protested Defendant's unlawful disability discrimination, harassment and hostile work environment in violation of the ADA, as alleged herein.

36. Defendant's actions, including ongoing and continuous harassment by Greg, permeated the workplace with discriminatory intimidation, ridicule and insult, as alleged herein, which was so severe or pervasive that it affected the terms and conditions of Plaintiff's employment and subjectively and objectively created a hostile and abusive work environment, which a reasonable person would find hostile or abusive, and which Plaintiff did find hostile and abusive.

37. As alleged herein, Defendant had knowledge that Plaintiff was a qualified individual with disabilities under the ADA.

38. From March 2018 through April 2019, Plaintiff was treated less favorably by her supervisor, was demoted and stripped of her historic job duties, moved to different accounts, placed on a PIP, micromanaged, told she needed to "*see a psychiatrist immediately,*" verbally degraded in the presence of clients and ultimately terminated, as alleged herein.

39. Notably, Plaintiff did not receive any write-up, verbal or written "counseling" or "PIP" until after she had notified her supervisor that she suffered from anxiety and depression.

40. Plaintiff complained of, and objected to, the disability discrimination, harassment and hostile work environment, as alleged herein.

41. After filing a formal complaint with HR, Plaintiff was placed on an "escalated PIP."

42. On or around April 12, 2019, Plaintiff was terminated.

43. Despite Plaintiff's numerous complaints, Defendant failed to stop, prevent, or otherwise address the ongoing discrimination and hostile work environment.

44. Defendant's actions were intentional and willful, and in deliberate disregard of and with reckless indifference to the federal laws and state laws.

45. Defendant engaged in the foregoing acts and conduct when they knew or should have known that the same were in violation of the ADA, and any alleged reasons to the contrary are pretext.

46. Defendant's conduct as alleged herein directly and proximately caused Plaintiff to suffer great mental anguish, humiliation, degradation, embarrassment, physical, and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

## COUNT IV

### HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S. Code § 12101, *et. seq*.

47. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

48. All conditions precedent to Count III have been satisfied.

49. Defendant's actions, including ongoing and continuous harassment by Plaintiff's supervisor, filled the workplace with discriminatory intimidation, ridicule and insult, as alleged

16

herein, which was so severe or pervasive that it affected the terms and conditions of Plaintiff's employment and subjectively and objectively created a hostile and abusive work environment, which a reasonable person would find hostile or abusive, and which Plaintiff did find hostile and abusive.

50. As alleged herein, Defendant had knowledge that Plaintiff was a qualified individual with disabilities under the ADA.

51. After telling her supervisor about her disabilities, Plaintiff was treated less favorably, was demoted, stripped of her historic job duties, placed on a PIP, micromanaged, verbally degraded in the presence of clients and ultimately terminated.

52. Plaintiff complained of, and objected to, the disability discrimination, harassment and hostile work environment, as alleged herein.

53. Despite Plaintiff's numerous complaints, Defendant failed to stop, prevent, or otherwise address the ongoing discrimination and hostile work environment.

54. Defendant's actions were intentional and willful, and in deliberate disregard of and with reckless indifference to the federal laws and state laws.

55. Defendant engaged in the foregoing acts and conduct when they knew or should have known that the same were in violation of the ADA, and any alleged reasons to the contrary are pretext.

56. Defendant's conduct as alleged herein directly and proximately caused Plaintiff to suffer great mental anguish, humiliation, degradation, embarrassment, physical, and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, MAUREEN MINOGUE, requests the following relief:

i. Acceptance of jurisdiction of this cause;

ii. Damages sufficient to compensate Plaintiff for her injuries;

iii. Back Pay;

iv. Emotional Distress Damages;

v. Liquidated Damages when available in Count I

vi. Punitive Damages when available in Counts II, III and IV;

vii. Pre-judgment and post-judgment interest;

viii. Litigation costs and expenses;

ix. Reasonable attorney's fees; and

x. Any and all other relief that this Honorable Court may deem just and equitable.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: __July 15, 2020__                Respectfully submitted,

MAUREEN MINOGUE

FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC

/s/ Elizabeth C. Chavez

>Elizabeth Chavez (#6323726)
>Kathleen Chavez (#06255735)
>FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
>10 West State Street, Suite #200
>Geneva, Illinois 60134
>Telephone: (630) 232-7450
>Facsimile: (630) 232-7452
>ecc@fmcolaw.com
>kcc@fmcolaw.com
>
>***Attorneys for Plaintiff***